# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Jodi A. Schwendimann, f/k/a
Jodi Dalvey,

      Plaintiff,

    v.

Arkwright Advanced Coating, Inc.,

      Defendant.

Arkwright Advanced Coating, Inc.,

      Counterclaim Plaintiff,

    v.

Jodi A. Schwendimann, f/k/a
Jodi Dalvey, and
Cooler Concepts, Inc.,

      Counterclaim Defendants.

**MEMORANDUM OPINION
AND ORDER**
Civil No. 11-820 ADM/JSM

---

David A. Daventport, Esq., Brent A. Lorentz, Esq., and Daniel J. Kelly, Esq., Winthrop & Weinstine, P.A., Minneapolis, MN, on behalf of Jodi A. Schwendimann and Cooler Concepts, Inc.

Kurt J. Niederluecke, Esq., and Laura L. Myers, Esq., Fredrikson & Byron, P.A., Minneapolis, MN, on behalf of Arkwright Advanced Coatings, Inc.

---

# I.  INTRODUCTION

On June 21, 2011, the undersigned United States District Judge heard oral argument on

Plaintiff Jodi A. Schwendimann ("Schwendimann") and Cooler Concepts, Inc.'s ("Cooler

Concepts") (collectively, the "Counterclaim Defendants") Motion to Dismiss [Docket No. 8]

Arkwright Advanced Coating, Inc.'s ("AACI") Counterclaim for inequitable conduct.  For the

reasons set forth below, the Counterclaim Defendants' Motion is granted.

## II.  BACKGROUND[1]

On January 16, 2008, before the commencement of this case against AACI, Plaintiff Jodi

A. Schwendimann filed a Complaint against Arkwright, Inc., ("Arkwright") (Case No. 08-cv-

162 ADM/JSM) alleging certain Arkwright T-shirt transfer products infringed Schwendimann's

U.S. Patent No. 6,884,311 (the "'311 Patent").  Countercl. [Docket No. 5] ¶ 10.[2]

On May 20, 2008, Arkwright deposed Schwendimann about her '311 Patent.  Id. ¶ 11.

During the deposition, Arkwright pursued a line of questioning regarding the meaning of the

term "release layer" as it is defined in the specification and used within Claim 6 of the '311

Patent.  Id. ¶ 12.  Arkwright contended the "release layer" comprises a silicone coating on a

substrate.  Id. ¶ 13.

On July 8, 2008, Schwendimann and her co-inventor, acting through counsel, filed Re-

issue Application No. 12/218,260 (the "'260 Reissue Application") with the PTO to amend the

'311 Patent.  Id. ¶ 19.  They also filed a Preliminary Amendment dated July 11, 2008 that

described all amendments to the '311 Patent.  Id. ¶ 22.  The stated purpose of the amendments

---

[1] In considering motions to dismiss, courts construe the pleadings in the light most favorable to
the nonmoving party, and view the facts alleged in the complaint as true.  See Hamm v. Groose,
15 F.3d 110, 112 (8th Cir. 1994).

[2] AACI's Answer and Counterclaim contains two sets of numbered paragraphs; the first set
corresponds to the Answer, and the second set to the Counterclaim.  See Docket No. 5.  Unless
otherwise noted, the numbered paragraphs in this Order refer to the second set.

was to correct defects causing the '311 Patent to be partly inoperative or invalid and to correct typographical errors.  Id.

The amendments to the '311 Patent included amending Figure 5, which depicts the layers of an image transfer sheet, by adding reference numeral 505 to refer to a silicone coating situated between a substrate layer and a white layer.  Id. ¶ 24.  Reference numeral 504 in Figure 5 was moved to refer to both the silicone coating and the white layer as portions of a release layer.  Id. ¶ 25.  The specification in the '311 Patent was also amended by inserting reference numeral 505 into the text.  Id. ¶ 24.  Schwendimann claimed that support for the Figure 5 amendments could be found in the '311 Patent at page 14, line 11 through page 16, line 9.  Id. ¶ 26.

The '260 Reissue Application was allowed and issued as Reissue Patent No. RE41,623 (the "'623 Reissue Patent") on September 7, 2010.  Id. ¶ 31.  After the 2008 deposition, Schwendimann also filed or amended continuation applications that were allowed for her remaining patents.  Id. ¶ 40.  The continuation applications included changes to the specifications and drawings similar to the '260 Reissue Application.  Id. ¶ 41.  Schwendimann did not represent to the PTO that the continuation applications were continuations-in-part.  Id.

AACI acquired certain assets of Arkwright on or about July 31, 2008, and continued to sell dark T-shirt transfer products.  Answer [Docket No. 5] ¶ 21; Countercl. ¶ 38.  On March 31, 2011, Schwendimann voluntarily dismissed her patent infringement claims against Arkwright, and filed a Complaint against AACI the next day.

On April 11, 2001, AACI filed an Answer and Counterclaim which includes an assertion

that Schwendimann's actions in amending the '311 Patent constitute inequitable conduct.  AACI alleges that after her deposition, Schwendimann deliberately pursued a broadened reissue patent based on her learning of material faults in the '311 Patent and after having had an opportunity to analyze Arkwright's products and technology.  Id. ¶¶ 19, 21, 34-37.  According to AACI, Claim 6 of the '311 Patent requires the "release layer" to be  impregnated with titanium oxide or other white pigment.  Id. ¶ 16.  The silicone coating of the Arkwright dark T-shirt product does not include a white pigment, but instead has a separate white layer.  Id. ¶ 17.  AACI alleges Schwendimann's deposition "confirmed" that Arkwright's dark T-shirt product does not infringe Claim 6 of the '311 Patent because it does not include a white pigment.  Id. ¶ 18.  AACI furthers the amendments sought by Schwendimann enlarged the scope of Claim 6 of the '311 Patent by broadening the release layer to include both the silicone coating and the white layer.  Id. ¶ 36.

In asserting that the amendments introduced new matter, AACI alleges a two-part release layer is not disclosed in the original text and drawings of the '311 Patent or in Schwendimann's earlier patents.  Id. ¶ 29.  AACI contends the text relied on by Schwendimann in amending Figure 5 contains only one sentence relating to the amended subject matter.  Id. ¶ 26.  That sentence describes:  "an image transfer sheet 500 that is comprised of a substrate layer 502, a release layer 504, comprising a silicone coating and a white layer 506 with a thickness of about 0.5 to 0.7 mils and having a melt index, MI, within a range of 40 - 280C."  Id.  AACI avers the grammatical construction of this sentence does not support a two-part release layer, but instead describes a release layer that is separate from the white layer.  Id. ¶¶ 27-28.  AACI alleges that

for Schwendimann's interpretation of the text as supporting a two-part release layer to be grammatically correct, the word "and" would need to be inserted so that the sentence would read: "a substrate layer 502, <u>and</u> a release layer 504, comprising a silicone coating and a white layer 506." <u>Id.</u> ¶ 28.

A reissue patent that enlarges the scope of the claims contained in an original patent shall not be granted unless it is applied for within two years of the grant of the original patent. <u>Id.</u> ¶ 32 (citing 35 U.S.C. § 251). The '260 Reissue Application was filed more than two years after the issuance of the '311 patent. <u>Id.</u> ¶ 33. AACI also alleges the continuation applications Schwendimann filed for other patents added new matter similar to that introduced in the '260 Reissue Application. <u>Id.</u> ¶¶ 40-41.

The Counterclaim Defendants seek dismissal of the inequitable conduct Counterclaim, arguing AACI has failed to allege a sufficient factual basis to state a plausible claim for relief.

### III. DISCUSSION

**A.     Motion to Dismiss Standard**

Rule 12 of the Federal Rules of Civil Procedure provides that a party may move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In considering a motion to dismiss, the pleadings are construed in the light most favorable to the nonmoving party, and the facts alleged in the complaint must be taken as true. <u>Hamm</u>, 15 F.3d at 112; <u>Ossman v. Diana Corp.</u>, 825 F. Supp. 870, 879-80 (D. Minn. 1993). Any ambiguities concerning the sufficiency of the claims must be resolved in favor of the nonmoving

party.  Ossman, 825 F. Supp. at 880.  Under Rule 8(a) of the Federal Rules of Civil Procedure,

pleadings "shall contain a short and plain statement of the claim showing that the pleader is

entitled to relief."

A pleading must contain "enough facts to state a claim to relief that is plausible on its

face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility

when the plaintiff pleads factual content that allows the court to draw a reasonable inference that

the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949

(2009).  Determining whether a complaint states a plausible claim for relief is "a context-specific

task that requires the reviewing court to draw on its judicial experience and common sense."  Id.

"But where the well-pleaded facts do not permit the court to infer more than the mere possibility

of misconduct, the complaint has alleged—but not 'shown'—'that the pleader is entitled to

relief.'" Id. (quoting Fed. R. Civ. P. 8(a)(2)).

## B.      Inequitable Conduct

A patent may be rendered unenforceable for inequitable conduct upon proof that the

patent applicant "(1) made an affirmative misrepresentation of material fact, failed to disclose

material information, or submitted false material information, and (2) intended to deceive the

[PTO]."  Star Scientific, Inc. v. R.J. Reynolds Tobacco Co., 537 F.3d 1357, 1365 (Fed. Cir.

2008).

A claim for inequitable conduct must be pled with particularity under Rule 9(b).  Exergen

Corp. v. Wal-Mart Stores, Inc., 575 F.3d 1312, 1326 (Fed. Cir. 2009).

> [T]o plead the "circumstances" of inequitable conduct with the requisite "particularity" under Rule 9(b), the pleading must identify the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO. Moreover, although "knowledge" and "intent" may be averred generally, a pleading of inequitable conduct under Rule 9(b) must include sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO.

Id. at 1328-29.  Whether a claim for inequitable conduct has been sufficiently pled is a question of Federal Circuit law.  Id. at 1326.

The high standards for pleading, as well as proving,[3] inequitable conduct are designed to curb overuse of the doctrine, thereby protecting the reputations of those who would be harmed by such charges; preventing use of inequitable conduct as a litigation tactic; and shielding the courts, patent system, and public from the burden created when such claims are brought on slender grounds.  See Exergen, 575 F.3d at 1331 (citing In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1418 (3d Cir. 1997) ( "[T]he goals of Rule 9(b) . . . include the deterrence of frivolous litigation based on accusations that could hurt the reputations of those being attacked.")); Therasense, 2011 WL 2028255, at *7-9 (discussing undesired consequences

---

[3] Proof of inequitable conduct requires clear and convincing evidence that an applicant (1) misrepresented or failed to disclose information that was but-for material to the patent's issuance, and (2) acted with the specific intent to deceive the PTO.  Therasense, Inc. v. Becton, Dickinson & Co., -- F.3d --, 2011 WL 2028255, at *9-11 (Fed. Cir. May 25, 2011)(en banc). Deceptive intent may be inferred from indirect and circumstantial evidence; however, "to meet the clear and convincing evidence standard, the specific intent to deceive must be the single most reasonable inference able to be drawn from the evidence."  Id. at *10 (quotations omitted).

 stemming from the routine charging of inequitable conduct).

**C.**     **Analysis**

The Counterclaim Defendants challenge the legal sufficiency of AACI's inequitable conduct Counterclaim, arguing the facts alleged do not support a plausible inference that Schwendimann (1) made an affirmative misrepresentation of material fact or failed to disclose material information to the PTO during the reissue examination, and (2) intended to deceive the PTO.

**1.       Misrepresentation of Material Fact or Omission of Material Information**

The Counterclaim Defendants argue neither a misrepresentation of material fact nor an omission of material information is alleged as inequitable conduct in the Counterclaim.  Because the PTO was provided with all information necessary to determine whether the '260 Reissue Application enlarged the scope of the '311 Patent claims, the PTO could have chosen to reject Schwendimann's argument that the claims were not broadened.

AACI responds that its "counterclaim is based on Schwendimann's misrepresentation to the PTO that she was correcting defects and typographical errors in the '311 Patent when she was actually seeking a broadening reissue."  AACI's Mem. in Opp. [Docket No. 15] at 6.  AACI insists that if the PTO had known Schwendimann was introducing new matter, it would not have issued the '623 Reissue Patent.  Id. at 10.

Thus, the threshold issue becomes whether Schwendimann's representation -- that she was correcting defects and typographical errors without broadening claims -- was a material

misrepresentation of fact or, instead, merely an argument advocating for patentability.  If

Schwendimann's representation is determined to be mere argument, the motion to dismiss must

be granted.  A misrepresentation of material fact may give rise to a claim for inequitable

conduct, however, an applicant's legal or interpretive arguments in favor of patentability are not

actionable.  See Rothman v. Target Corp., 556 F.3d 1310, 1328-29 (Fed. Cir. 2009) ("While the

law prohibits genuine misrepresentations of material fact, a prosecuting attorney is free to

present argument in favor of patentability without fear of committing inequitable conduct.");

Young v. Lumenis, Inc., 492 F.3d 1336, 1349 (Fed. Cir. 2007) ("We therefore fail to see how the

statements . . . which consist of attorney argument and an interpretation of what the prior art

discloses, constitute affirmative misrepresentations of material fact."); Innogenetics, N.V. v.

Abbott Labs., 512 F.3d 1363, 1379 (Fed. Cir. 2008) ("[A]n applicant is free to advocate its

interpretation of its claims and the teachings of prior art."); Environ Prods., Inc. v. Total

Containment, Inc., 951 F. Supp. 57, 61-62 (E.D. Pa. 1996) (striking inequitable conduct defense

because applicant's statutory interpretation did not constitute "material information");

McKechnie Vehicle Components USA, Inc. v. Lacks Indus., Inc., No. 09-cv-11594, 2010 WL

4643081, at *5 (E.D. Mich. Nov. 9, 2010) ("[M]isrepresentation of a disclosed prior art reference

must be distinguished from instances when an attorney takes a legal position on a particular

patent that parties in litigation disagree upon, or that a court deems erroneous at a later date.").

      An applicant's legal or interpretive arguments favoring patentability are not

misrepresentations if such arguments do not contain "gross mischaracterizations or unreasonable

interpretations" and are not "demonstrably false."  Young, 492 F.3d at 1349.  See also Life

9

Tech., Inc. v. Clontech Labs. Inc., 224 F.3d 1320, 1326 (Fed. Cir. 2000) (finding inventors'

interpretation of a reference's teaching was merely an argument the patent examiner was free to

reject and could not "give rise to a determination of inequitable conduct"); Rothman, 556 F.3d at

1329 (determining an attorney's "attempt to characterize . . . prior art in a manner favorable to

the attorney's client" to be "nothing more than attorney argument").

On the other hand, if an applicant's legal or interpretive argument is based on distorted

facts or is contrary to what a person of skill in the art would understand a reference to disclose,

the interpretation exceeds the bounds of acceptable argument and may be subject to a claim for

inequitable conduct.  See Semiconductor Energy Lab. Co., Ltd. v. Samsung Elecs. Co., 204 F.3d

1368, 1376-78 (Fed. Cir. 2000) (upholding inequitable conduct charges where an applicant's

exclusion of unfavorable portions of a translated Japanese prior art reference was a misleading

representation of the reference's teachings); Ring Plus, Inc. v. Cingular Wireless Corp., 614 F.3d

1354, 1360-61 (Fed. Cir. 2010) (upholding the determination that an applicant's interpretation of

a reference was a material misrepresentation, because the interpretation was contrary to what a

person of skill in the art would understand the reference to mean, and thus "outside the bounds

of permissible attorney argument").

Here, the alleged misrepresentation of fact is Schwendimann's assertion that the text of

the '311 Patent supported a two-part release layer, and thus the amendments did not introduce

new matter.  Countercl. ¶ 28.  AACI alleges that, contrary to Schwendimann's representation,

the '260 Reissue Application did introduce new matter because "[t]he release layer comprising

both the silicone coating and the white layer is not disclosed anywhere in the original text or

drawings.  Nor is it disclosed in Schwendimann's earlier patents."  <u>Id.</u> ¶ 29.  AACI insists the

amendments to Figure 5 were not supported by the sentence in the '311 Patent describing: "an

image transfer sheet 500 that is comprised of a substrate layer 502, a release layer 504,

comprising a silicone coating and a white layer 506 with a thickness of about 0.5 to 0.7 mils and

having a melt index, MI, within a range of 40 - 280C."  <u>Id.</u> ¶ 26.  AACI argues that to read this

sentence to support a two-part release layer, the word "and" must be inserted so that the sentence

would read: "a substrate layer 502, <u>and</u> a release layer 504, comprising a silicone coating and a

white layer 506."  <u>Id.</u> ¶¶ 27-28.  Thus, urges AACI, Schwendimann's interpretation of the '311

Patent as supporting the Figure 5 amendments was based on a grammatically incorrect reading

of the sentence.  <u>Id.</u>

  However, Schwendimann's interpretation of the text as supporting a two-part release

layer is not unreasonable or demonstrably false.  <u>Young</u>, 492 F.3d at 1349.  The sentence may

arguably be interpreted to describe "a release layer 504, *comprising a silicone coating and a*

*white layer . . . .*"  Countercl. ¶ 26 (emphasis added).  As such, Schwendimann's interpretation

was within the "bounds of permissible [applicant] argument."  <u>Ring Plus</u>, 614 F.3d at 1361.

Moreover, Schwendimann provided the PTO with a description of all requested amendments to

the text and drawings of the '311 Patent.  Countercl. ¶ 22.  The examiner was able to compare

the requested amendments to the original text and drawings and reach an independent conclusion

as to whether the grammatical construction of the sentence at issue supported the Figure 5

amendments or, instead, introduced new matter.  <u>See</u> <u>Rothman</u>, 556 F.3d 1329 ("[T]he Patent

Act gives the examiner the discretion to reject or accept an applicant's arguments based on the

examiner's own conclusions regarding the prosecutorial record."); <u>Young</u>, 492 F.3d at 1349 (finding an applicant's argument and interpretation of a prior art reference's disclosures not to constitute affirmative misrepresentations of fact, because the examiner had been provided with the prior art reference and "was free to reach his own conclusions and accept or reject [the applicant's] arguments"); <u>Azko N.V. v. U.S. Int'l Trade Comm'n</u>, 808 F.2d 1471, 1482 (Fed. Cir. 1986) (holding a patentee's "arguments before the examiner did not constitute material misrepresentations" because the "examiner was free to reach his own conclusion . . . based on the art in front of him"); <u>Brady Constr. Innovations, Inc. v. Perfect Wall, Inc.</u>, 290 Fed. Appx. 358, 364 (Fed. Cir. 2008) (finding no inequitable conduct where the PTO could have rejected the patentee's arguments regarding the scope of the claims in an original patent).

AACI relies on several cases as authority that an inequitable conduct claim may be based on the improper introduction of new matter.  <u>See</u> AACI's Mem. in Opp. at 7 (citing <u>Weatherford Int'l, Inc. v. Halliburton Energy Svcs., Inc.</u>, No. 2:09-CV-261, 2011 WL 902243, at *3-6 (E.D. Tex. Mar. 14, 2011)); <u>Rainbow Rewards, USA, Inc. v. Source, Inc.</u>, Civ. No. 07-cv-00239, 2007 WL 4365669, at *2-3 (D. Colo. Dec. 10, 2007); <u>Brady</u>, 290 Fed. Appx. at 364.  Each is inapposite to the context here.

<u>Rainbow Rewards</u> has no bearing on the Counterclaim Defendants' substantive argument that the '260 Reissue Application did not constitute a material representation, because the issue in <u>Rainbow Rewards</u> was limited to whether the inequitable conduct claim had been alleged with sufficient particularity.  2007 WL 4365669, at *2 (finding the defendant "failed to make any substantive argument pursuant to Rule 12(b)(6)").

Weatherford involved a patent attorney's request for a Certificate of Correction[4] to change the word "inner" to "outer" more than two years after a patent had originally issued. Weatherford, 2011 WL 902243, at *1-2. The pleaded facts in Weatherford were found to sufficiently allege a misrepresentation, because it could be reasonably inferred that by requesting a Certificate of Correction, the patent attorney "misrepresented the error to be merely typographical." Id. at *5. Here, however, Schwendimann subjected the requested amendments to the reexamination process. Additionally, unlike the demonstrably false argument in Weatherford that changing "inner" to "outer" merely corrects a typographical error, Schwendimann's argument that the amendments did not introduce new matter involves a more nuanced reading of the '311 Patent text.

Brady actually supports a determination that Schwendimann's assertions in the Reissue Application were not misrepresentations of material fact. See Brady, 290 Fed. Appx. at 364. Brady holds that where the PTO has been provided all material information necessary for determining whether a reissue broadens a claim, an applicant's arguments in support of the reissue do not constitute inequitable conduct. Id. Here, the PTO was provided with the text and drawings of the '311 Patent relied on by Schwendimann as support for her assertion that the amendments did not introduce new matter. Countercl. ¶¶ 22, 26. This is the very same information relied on by AACI to argue that the amendments did introduce new matter. Id. ¶¶ 27-28. Thus, as in Brady, the PTO was armed with all material information necessary to

---

[4] A Certificate of Correction is used to correct typographical or clerical mistakes when the correction does not require re-examination. Weatherford, 2011 WL 902243, at *3 (citing 35 U.S.C. § 255).

determine whether the amendments broadened the scope of the '311 Patent.[5]  Because "the PTO

could have rejected [Schwendimann's] arguments, . . . [she] did not commit inequitable conduct

. . . on that basis."  Brady, 290 Fed. Appx. at 364.[6]

## 2.   Intent

Because AACI's inequitable conduct Counterclaim fails to adequately allege a material

misrepresentation or omission, it is not necessary to evaluate whether the Counterclaim

adequately alleges the element of intent to deceive.  If the issue were to be decided here, the

pleaded facts do not support a reasonable inference that Schwendimann "(1) knew of the

withheld material information or of the falsity of the material misrepresentation, and (2)

withheld or misrepresented this information with a specific intent to deceive the PTO."  Exergen,

575 F.3d at 1328-29.

First, the allegations do not allow a reasonable inference Schwendimann knew her

---

[5] The information provided to the PTO during the reissue process in Brady included two earlier
court decisions that were unfavorable to the applicant because they construed the applicant's
claims to exclude the embodiment that the applicant subsequently sought to add through reissue.
Brady, 290 Fed. Appx. at 362, 364.  Here, the '311 Patent claims have not been construed by the
Court, and AACI does not identify or allege material facts that were known and withheld by
Schwendimann during the reissue process.  See generally Countercl.  Instead, "AACI's
counterclaim is based on Schwendimann's misrepresentation to the PTO that she was correcting
defects and typographical errors in the '311 Patent when she was actually seeking a broadening
reissue."  AACI's Mem. in Opp. at 6.
[6] AACI further argues dismissal of its inequitable conduct Counterclaim is improper at this stage
because Brady was decided on summary judgment rather than a motion to dismiss.  However,
the factual scenario causing the claim to fail in Brady is the same as that alleged here: the PTO
was provided with all relevant information on which to base its decision and was free to reject
the interpretation advocated by the applicant.  Brady, 290 Fed. Appx. at 364.  Thus, as in Brady,
Schwendimann's Reissue Application does not provide a basis for inequitable conduct.

representation (that the claims of the '311 Patent were not being broadened) was false.  The truth

or falsity of Schwendimann's representation was not objectively ascertainable, because such

claims had not been subjected to claim construction.  While it is reasonable to infer

Schwendimann knew, following the 2008 deposition, that the scope of Claim 6 of the '311

Patent was *disputed*, it is not reasonable to infer Schwendimann know her interpretation of

Claim 6 was *false*.

Additionally, although AACI alleges Schwendimann intended to deceive the PTO by

"cleverly us[ing] a play on the grammar to deceptively assert that the specification supports a

two-part release layer," Countercl. ¶ 28, no facts are alleged to show how the grammar may have

been "played."  For example, there are no allegations that the text was altered or cited out of

context.  To the contrary, Schwendimann relied on the original text of the '311 Patent in

claiming support for the requested amendments.  Id. ¶ 26.  Thus, the allegation of a "play on the

grammar" is an unsupported conclusion.  Wiles v. Capitol Indem. Corp., 280 F.3d 868, 870 (8th

Cir. 2002) ("While the court must accept allegations of fact as true when considering a motion to

dismiss, the court is free to ignore legal conclusions, unsupported conclusions, unwarranted

inferences and sweeping legal conclusions cast in the form of factual allegations.").

Accordingly, the circumstances alleged by AACI "do not plausibly suggest any

deliberate decision to withhold a known material reference or to make a knowingly false

misrepresentation - a necessary predicate for inferring deceptive intent."  Exergen, 575 F.3d at

1331 (quotations omitted).

15

**IV.  CONCLUSION**

Based on the foregoing, and all the files, records and proceedings herein, **IT IS**

**HEREBY ORDERED** that Schwendimann and Cooler Concepts' Motion to Dismiss [Docket

No. 8] is **GRANTED**, and Count II of AACI's Counterclaim is **DISMISSED.**

BY THE COURT:


_____s/Ann D. Montgomery_____
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  September 8, 2011.

16