UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Jodi A. Schwendimann, f/k/a<br>Jodi A. Dalvey,<br>      Plaintiff,<br>vs.<br><br>Arkwright Advanced Coating, Inc.,<br><br>      Defendant.<br>_____<br>Arkwright Advanced Coating, Inc.,<br><br>    Counterclaim Plaintiff,<br>v.<br>Jodi A. Schwendimann, f/k/a<br>Jodi A. Dalvey, and<br>Cooler Concepts, Inc.,<br><br>    Counterclaim Defendants. | Civil No. 11-cv-820 ADM/JSM<br><br><br><br>**JODI A. SCHWENDIMANN'S<br>MEMORANDUM OF LAW IN<br>SUPPORT OF RENEWED<br>MOTION FOR SUMMARY<br>JUDGMENT ON STANDING** |

## INTRODUCTION

There is no genuine issue of material fact in dispute. A valid agreement assigning the '845 Application existed a decade ago and there is a later prepared, statutorily sufficient written instrument to memorialize the transfer that occurred. Plaintiff Jodi A. Schwendimann ("Ms. Schwendimann") negotiated a deal with ACT's President and CEO, Nabil Nasser, ("Mr. Nasser"), they reached an agreement, they conveyed the terms of their agreement to their lawyer in early 2002, and they asked their lawyer to memorialize the transfer. Their lawyer subsequently prepared the written instrument to memorialize the transfer. The agreement that underlies the transfer is supported by undisputed facts of mutual assent and the only party seeking to invalidate the transfer is a

third party who continues to intentionally infringe otherwise valid patents. Accordingly, the Court should grant Ms. Schwendimann's renewed Motion for Summary Judgment.

## PROCEDURAL HISTORY

A.  **THIS COURT'S PRIOR ORDER.**

On March 19, 2012, the Court issued a Memorandum Opinion and Order ("Order") addressing the parties' cross motions on the issue of Ms. Schwendimann's standing in this action. [Doc. No. 87.] As the Court recognized, "Schwendimann asserts she has standing as the assignee of the '845 Application and the resulting Patents-in-Suit." *Id.* at 9.[1]  Arkwright Advanced Coating, Inc. ("AACI") attacked this assertion, contending that Ms. Schwendimann did not have a written instrument to memorialize the assignment to her in compliance with 35 U.S.C. § 261. *Id.* 8-9. The Court did not accept AACI's contention, finding, instead, that a satisfactory written instrument existed. *Id.* at 13.

This did not, however, end the inquiry concerning Ms. Schwendimann's standing because the Court directed the parties to further develop the record so that it could determine whether a valid, underlying agreement to assign the '845 Application to Ms. Schwendimann existed. *Id.* at 13 – 14. Specifically, the Court instructed the parties to focus on the evidence of mutual assent (offer, acceptance and consideration) between Ms. Schwendimann and her assignor (American Coating Technologies, Inc. ("ACT")), concluding that this evidence is necessary for the Court to confirm standing. *Id.* at 14 –

---

[1] The Court also recognized the parties' agreement that "the September 2011 assignment does not bear" on Ms. Schwendimann's standing contention. (Order at 7, n 4.)

15. Accordingly, the Court denied the parties' cross motions without prejudice and deferred the matter to Magistrate Judge Mayeron "to establish the precise contours of further factual development" on the issue of mutual assent.[2] *Id.* at 17.

## B.  ADDITIONAL FACTUAL DEVELOPMENT FOLLOWING THE COURT'S ORDER.

On April 24, 2012, in accordance with the Order and following a discovery order from Judge Mayeron, the parties deposed Mr. Nasser under Subpoena in Cincinnati, Ohio, and he was represented by counsel from the law firm of Frost Brown Todd, LLC. (Affidavit of David A. Davenport ("Davenport Aff."), Ex. A at 3.)  *See* Doc. No. 87 at 15 – 17.)[3]  Based on Mr. Nasser's testimony, along with the evidence developed by the

---

[2] When the parties were before the Court on their cross motions, AACI had a Motion to Compel pending before Judge Mayeron.  Judge Mayeron ultimately denied essentially all discovery being sought by AACI, finding that "[i]nstead of attempting to level the playing field based on disclosures by plaintiff, defendant is attempting to use the waiver of 2003 information as a means to get at the litigation strategy of plaintiff's present litigation counsel."  [Doc. No. 101 at 11.]  Indeed, the only discovery resulting from Plaintiff's motion to compel was the production of a brief e-mail exchange between Ms. Schwendimann's litigation counsel and Mr. Nasser concerning Mr. Nasser's previously filed declaration.  (Davenport Aff. at ¶ 3.)

[3] At oral argument on the cross motions, AACI complained that it had been unable to reach Mr. Nasser.  AACI also grossly overstated his dealings with Ms. Schwendimann in an apparent effort to support the notion that there is some substantial, on-going business relationship between the two that justified AACI's misplaced demand that Ms. Schwendimann produce Mr. Nasser for a deposition in Minneapolis.  Mr. Nasser, however, quickly dispelled AACI's misleading complaints when he testified that he and AACI's President (Phil Hursh – who has filed a declaration [Doc. No. 30] and attended two failed mediations in this action) are friends, and when he testified that all Mr. Hursh had to do was call him if AACI wanted to discuss this matter with him.  (Davenport Aff., Ex. A at 69:6; 131:14 – 132:22.)  Mr. Nasser also testified that he rarely consults with Ms. Schwendimann, estimating that last year he consulted with either her or her companies less than "10, 15 hours the whole year."  (*Id.* at 64:21—66:1.)

3

parties in previous discovery, the record is undeniably certain: ACT did, in fact, assign the '845 Application to Ms. Schwendimann a decade ago pursuant to a valid agreement.

## STATEMENT OF FACTS[4]

**MR. NASSER CONFIRMED THAT ACT DID, IN FACT, ASSIGN THE '845 APPLICATION TO MS. SCHWENDIMANN A DECADE AGO PURSUANT TO AN AGREEMENT REACHED BETWEEN ACT AND MS. SCHWENDIMANN.**

A.  Mr. Nasser was President and Chief Executive Officer of Act.

Mr. Nasser testified that he was the President and Chief Executive Officer of ACT at all times relevant to this proceeding, and that he had authority to transfer the '845 Application to Ms. Schwendimann. (Davenport Aff., Ex. A at 9:9 – 13:16; 46:14 – 24.) Mr. Nasser identified a brief period of time, either in 1994 or 1997, when Ms. Schwendimann served as interim President of ACT, but he uniformly confirmed that he was at all times thereafter, including in 2001 and 2002, the President and Chief Executive Officer of ACT. (*Id.* at 13:5 – 13:16.)

B.  When Act Fell on Hard Times, it Owed Ms. Schwendimann and the Schwegman Law Firm Substantial Sums of Money.

Mr. Nasser testified that when ACT began experiencing financial difficulties, it owed Ms. Schwendimann "substantial money" in the form of outstanding commissions and wages. (*Id.* at 26:5 – 14.) As of August 2001, ACT's obligations to Ms. Schwendimann had been documented through a promissory note with a principal

---

[4] Based on the briefing that has already occurred concerning standing, and considering the Court's Order and the resulting page limitations for this renewed motion, Ms. Schwendimann respectfully incorporates the prior facts provided to the Court. This brief will focus on Mr. Nasser's testimony and other evidence related to mutual assent that was previously developed by the parties.

4

balance of $282,073.25, which was secured by a wage note giving Ms. Schwendimann a security interest in all of ACT's personal property at that time. (*Id.*; *see also* Doc. No. 54-2 (Lorentz Decl.), Ex. K at 1-2.) Mr. Nasser testified that by late 2001, however, it had "become clear that it would be almost impossible for ACT to make payment on these wages and then we (ACT and Ms. Schwendimann) started entertaining options to take care of that." (Davenport Aff., Ex. A at 28:6 – 21.) As a result, ACT and Ms. Schwendimann began discussing what to do with regard to ACT's debt to her. (*Id.*)

At this same time, ACT also owed the Schwegman law firm ("SLW") outstanding receivables in the form of attorneys' and filing fees incurred in connection with ACT's pending patent applications, including the '845 Application. (*Id.* at 27:8 – 28:2.) According to SLW, ACT simply failed to pay the law firm for legal services that were being provided while the firm was prosecuting the patent applications. (Decl. of Schwegman, Lundberg & Woessner ("SLW Decl.") at 5, ¶ 14.) Mr. Nasser estimated, as of late 2001, that ACT owed SLW "at least over $25 or $30,000" in attorney's fees, and he confirmed that ACT simply could not pay the bill or continue to prosecute any of the pending patent applications, the value of which was unknown at the time. (Davenport Aff., Ex. A at 27:22 – 28:2; 28:23 – 29:3.)

    C.    <u>Act and Ms. Schwendimann Reach an Agreement Pursuant to Which Act Transfers the '845 Application to Ms. Schwendimann</u>.

Based on ACT's financial struggles and debts owed to Ms. Schwendimann, Mr. Nasser testified that he started having conversations with Ms. Schwendimann concerning how to address ACT's outstanding debts to her. (*Id.* at 28:6 – 11.) As these

conversations progressed, the issue of ACT's pending patent applications (including the '845 Application), along with ACT's outstanding debt owed to SLW, became a part of the discussions. (*Id.* at 28:12 – 29:10; 32:6 – 22.) Ultimately, ACT and Ms. Schwendimann reached an agreement pursuant to which ACT transferred the patent applications, including the '845 Application, to Ms. Schwendimann. (*Id.* at 29:11 – 21.) Ms. Schwendimann agreed to "take responsibility" for and satisfy ACT's outstanding debts to SLW, and to accept the transfer as a contribution toward ACT's outstanding debts to her, even though it was understood at the time that the patent applications could not satisfy ACT's debts to her. (*Id.* at 28:6 – 32:22; 73:9 – 74:1; 84:17 – 87:4.) Pursuant to their agreement, it was understood that Ms. Schwendimann would not sue ACT for her unpaid wages. (*Id.* at 34:2 – 9.)[5] Ms. Schwendimann continued to possess a security interest in ACT's personal property. (*Id.* at 34:23 – 36:15; Doc. No. 54-2 (Lorentz Decl.), Ex. K at 1-2.)

    D.    <u>Act and Ms. Schwendimann Notify SLW of Their Agreement and Instruct the Firm to Memorialize the Assignment.</u>

After they reached their agreement, Mr. Nasser and Ms. Schwendimann met with SLW attorney Janal Kalis, and instructed her to memorialize the assignment to Ms. Schwendimann, and advised her of the terms of ACT's agreement with Ms. Schwendimann. (*Id.* at 29:22 – 30:13; 74:20 – 75:1; 83:17 – 86:20.) Mr. Nasser

---

[5] Mr. Nasser testified that he believed certain other documentation concerning this mutual assent existed at one time in 2001 or 2002, but ACT lost access to its records and documentation over a decade ago when it went out of business. (Davenport Aff., <u>Ex. A</u> at 78:5 – 79:19; 88:7 – 89:7.)

explained that the entire purpose for the meeting was to tell Ms. Kalis that ACT and Ms. Schwendimann had reached an agreement pursuant to which ACT had assigned its patent applications, including the '845 Application, to Ms. Schwendimann. (*Id.* at 30:14 – 32:5.) In his words, Mr. Nasser stated that the meeting was "basic instruction for her. Basically I said the company agreed – entered an agreement to transfer all intellectual property to Jodi." (*Id.* at 30:20 – 31:8.) Thus, Mr. Nasser further testified that:

> When we went there we asked them to make sure to draft the document to satisfy the transfer on the intellectual property to Jodi and we rely heavily on that firm at that point because they understand what intellectual property is and they are representing ACT at that point. And we basically indicate to them, to Janal you now – we authorize you to prepare document and all necessary things we need to make sure all these transfer to Jodi and Jodi will take responsibility for payment and everything afterward … she was clearly under an instruction to proceed with the document necessary to fulfill that – that deal. That in simple form was the case.

(*Id.* at 80:8 – 81:7.) Furthermore, Mr. Nasser explained that "there was no reason for me to meet with her except for that purpose. Cost a lot of money to meet with attorneys just to entertain a thought." (*Id.* at 31:9 – 18.) Following the meeting, Mr. Nasser moved on to other things because he understood that Ms. Schwendimann owned the patent applications, including the '845 Application, pursuant to the agreement ACT had reached with her. (*Id.* at 71:14 – 72:3; 73:12 – 74:1; 84:17 – 86:20.)

Thereafter, SLW opened three new client matters for Ms. Schwendimann, which represented the '845 Application and two others. (Order at 4.) Ms. Schwendimann satisfied ACT's outstanding debts owed to SLW, thus ACT was not pursued by SLW and Mr. Nasser does not recall receiving any further invoices or statements from the firm.

7

(Davenport Aff., Ex. A at 86:21 – 87:4)  Likewise, Ms. Schwendimann worked with SLW to prosecute the patent applications in the years that followed (including the '845 Application), which included payments for various prosecution fees and related attorney's fees.

### E. Ms. Kalis Prepares Assignments to Memorialize the Assignment.

The Court's Order details the relevant form assignments that Ms. Kalis ultimately prepared following ACT informing her of the agreement it reached with Ms. Schwendimann, thus Ms. Schwendimann will not restate the circumstances here. [Doc. No. 87 at 3 – 5.]  Instead, Ms. Schwendimann will focus on Mr. Nasser's testimony concerning the executed assignment of the '983 Application and the unexecuted assignment of the '845 Application.

Concerning the unexecuted form assignment of the '845 Application (which Ms. Kalis prepared and is currently in the record), Mr. Nasser testified that he recalls having executed it and confirmed that the terms therein accurately represent ACT's assignment to Ms. Schwendimann.  (Davenport Aff., Ex. A at 38:6 – 39:16; 119:4 – 122:9; SLW Decl., Ex. H.)  He further testified that ACT would have had a copy of the signed version, but its records are gone and he does not have one to provide.  (*Id.*)  Concerning the executed assignment of the '983 Application, Mr. Nasser confirmed that ACT assigned and transferred its rights and interests in this application to Ms. Schwendimann just like it did with the '845 Application.  (*Id.*)  Indeed, Mr. Nasser confirmed that the '845 Application and the '983 Application were assigned by ACT to Ms. Schwendimann pursuant to the same (one) agreement.  (*Id.*)

## ARGUMENT

A.  **STANDARD OF REVIEW.**

As the Court has previously held, the unexecuted version of the '845 Application is a sufficient writing to satisfy 35 U.S.C. § 261, but it does not identify the underlying mutual assent that existed to support its preparation. Thus, as the Court stated, the critical issue for determining standing is not solely whether § 261 is satisfied (because it is), it is whether ACT and Ms. Schwendimann entered into a valid agreement for the assignment of the '845 Application from ACT to Ms. Schwendimann.

The Court's prior Order identifies the standard of review that applies to summary judgment motions. (Order at 9.) In addition, because the issue of standing is raised again with this renewed motion, the "facts related to standing issues are resolved by the Court." (*Id.* at 8 (citations omitted).) Thus, if the Court finds that there are no genuine issues of material fact concerning mutual assent (offer, acceptance and consideration), then Ms. Schwendimann has standing and this case can proceed forward on its merits.[6]

---

[6] Concerning consideration for assignments, case law provides, as between parties, that consideration is not necessary and parties are estopped from challenging consideration on the basis of the lack thereof if, on the face of the assignment, there is a recital of consideration in the written instrument. *See, e.g., Bowen v. Willard*, 281 N.W. 256, 259 (Minn. 1938); *Keller v. Bass Pro Shops, Inc.*, 15 F.3d 122, 124. (8th Cir. 1994).

B. **A VALID AGREEMENT EXISTED BETWEEN ACT AND MS. SCHWENDIMANN BEFORE THE SCHWEGMAN FIRM PREPARED THE SATISFACTORY WRITING TO MEMORIALIZE THE ASSIGNMENT OF THE '845 APPLICATION.**

AACI cannot legitimately dispute that ACT and Ms. Schwendimann entered into a valid agreement pursuant to which ACT assigned the '845 Application to Ms. Schwendimann. As the above facts confirm, ACT was in financial distress, had closed its doors, and owed money to Ms. Schwendimann and SLW as of late 2001 and early 2002. At this time, ACT realized that it would not be able to continue prosecution of various patent applications that SLW had filed on its behalf, and SLW was unwilling to continue its work without being paid. Moreover, these applications were in the early stages of prosecution, thus they had limited and unknown value.

Ms. Schwendimann, who was a named inventor on the patent applications (including the '845 Application), expressed an interest in continuing with the patents. Accordingly, ACT assigned the patent applications to Ms. Schwendimann. At the time of the assignment, it was understood and agreed that Ms. Schwendimann would assume responsibility for all fees and costs moving forward with the prosecution, and it was also understood and agreed that Ms. Schwendimann would satisfy the outstanding debts owed by ACT to SLW. Further, ACT and Ms. Schwendimann understood and agreed that she would be waiving her right to sue ACT for any of the outstanding debts owed to her. ACT did not expect that the transfer would otherwise reduce the amount of money it owed to Ms. Schwendimann and Ms. Schwendimann continued to possess a security interest in ACT's personal property. However, ACT did expect that the transfer would

likely contribute to some of what it owed to her at the time, but it remained unknown since the patents were still in prosecution.

The actual assignment, in fact, occurred no later than early 2002, pursuant to the agreement reached between ACT and Ms. Schwendimann.  This has been confirmed by the assignor (ACT), through the testimony of its President and CEO at the time (Mr. Nasser).  This is further confirmed by the fact that in June of 2002, after ACT and Ms. Schwendimann informed SLW of "the deal" and instructed the firm to memorialize the transfer, the Schwegman firm opened three new client files under Ms. Schwendimann's name, including one for the '845 Application (File No. 1010.021).  While SLW did not immediately prepare written assignments to memorialize the transfer and, in fact, waited until February of 2003 to document it, there simply is no evidence to refute that a valid agreement was reached between the parties prior to SLW memorializing the transfer; and there is no evidence to refute that the assignment occurred well before SLW prepared the writing to satisfy 35 U.S.C. § 261.  Moreover, when the form assignment documents were ultimately prepared by SLW, each of the assignments expressly noted that "Assignor <u>has</u> sold, assigned, and transferred" the patent applications to Ms. Schwendimann.  And, the assignment documents reflect that the transfer had been made "for good and valuable consideration, the receipt and sufficiency whereof is hereby acknowledged."

In sum, a valid agreement exists pursuant to which an assignment was made and there is a statutorily sufficient writing to memorialize it.

## CONCLUSION

Ms. Schwendimann has standing as the assignee of the '845 Application and can pursue AACI for its intentional patent infringement. Ms. Schwendimann respectfully requests that her motion for summary judgment on the issue of standing be granted.

Dated: May 3, 2012          WINTHROP & WEINSTINE, P.A.

/s/ David A. Davenport
David A. Davenport (#285109)
Brent A. Lorentz (#386865)

225 South Sixth Street, Suite 3500
Minneapolis, MN 55402
(612) 604-6400
ddavenport@winthrop.com;
blorentz@winthrop.com

**Attorneys for Plaintiff/Counterclaim Defendants**

6878609v2