UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Jodi A. Schwendimann, f/k/a<br>Jodi A. Dalvey,<br>                   Plaintiff,<br>vs.<br><br>Arkwright Advanced Coating, Inc.,<br><br>                   Defendant.<br>_____<br>Arkwright Advanced Coating, Inc.,<br><br>               Counterclaim Plaintiff,<br>v.<br>Jodi A. Schwendimann, f/k/a<br>Jodi A. Dalvey, and<br>Cooler Concepts, Inc.,<br><br>               Counterclaim Defendants. | Civil No. 11-cv-820 ADM/JSM<br><br><br><br><br>**JODI A. SCHWENDIMANN'S<br>REPLY MEMORANDUM OF<br>LAW IN SUPPORT OF<br>RENEWED MOTION FOR<br>SUMMARY JUDGMENT ON<br>STANDING** |

## INTRODUCTION

When this Court last considered the issue of standing, it resolved an important question, denied cross-motions without prejudice, and identified the following very straightforward issue to address through additional discovery and renewed motion practice: as of the time the writing was prepared to memorialize the assignment of the '845 Application to Ms. Schwendimann from American Coating Technology ("ACT"), had the parties mutually assented to an underlying agreement for the assignment such that the writing could properly be construed to give meaning to the parties' actual intent? The answer to this question is "yes," thus Ms. Schwendimann has standing as a result.

The Court made clear in its March 19, 2012, Memorandum Opinion and Order that the primary question in need of further evidence was the mutual assent of ACT to the assignment. In particular, the Court noted an absence of sufficient evidence regarding ACT's assent to the assignment, including the terms agreed to by ACT, because the Affidavit of Mr. Nabil Nasser was not sufficient. Mr. Nasser has since been deposed and provided the evidence which the Court previously found lacking. No doubt unhappy with Mr. Nasser's testimony and the fact that it confirms Ms. Schwendimann has standing, Arkwright Advanced Coating, Inc.'s ("AACI") most recent brief re-plows old ground, adopts new arguments and contrives purported inconsistencies in the record to avoid the inevitable and proper conclusion that Ms. Schwendimann has standing.

AACI is unwilling to accept that the Court simply wanted evidence of mutual assent before making a final determination on standing. Thus, rather than focus on mutual assent, AACI has filed another 30 page Brief laced with sharp accusations and arguments aimed at convincing the Court that apparently no one owns, or has standing to sue upon, the patents-in-suit. However, once the Court sifts through AACI's misplaced and overzealous advocacy, it will be readily apparent that the material facts concerning mutual assent are not in genuine dispute: (a) ACT owed Ms. Schwendimann and Schwegman Lundberg & Woessner ("SLW") substantial sums of money in late 2001 and early 2002, while certain patent applications were in process with SLW and pending before the USPTO; and (b) ACT and Ms. Schwendimann agreed at the time that, in exchange for the transfer of this intellectual property from ACT to Ms. Schwendimann, she would satisfy ACT's outstanding debts to SLW and not sue ACT for its debts to her.

Mr. Nasser testified that the underlying agreement occurred years ago, and he further testified that Ms. Schwendimann lived up to her end of the bargain. His testimony is consistent with Ms. Schwendimann's, yet AACI marches on and seeks a finding that no agreement existed at the time between ACT and Ms. Schwendimann. Unfortunately for AACI, however, SLW has confirmed the existence of the agreement at the time because, following their mutual assent, ACT and Ms. Schwendimann met with their lawyer, told her about the agreement and transfer, and asked the law firm to memorialize the transfer with the proper documentation. After the law firm did not immediately memorialize the transfer when informed of it in June, 2002, and then made subsequent mistakes in the documentation of the transfer and has been, as a result, beaten over the head repeatedly by AACI, AACI now attempts to side-step the evidence of the agreement and transfer by arguing that everyone is biased and not telling the truth.[1] As has become the norm, however, AACI does not offer any evidence to dispute the fundamental, underlying truth of the evidence before the Court there is a valid, underlying agreement pursuant to which ACT transferred its intellectual property to Ms. Schwendimann and she paid good and valuable consideration for the assignment

---

[1] AACI spends a great deal of time arguing that Ms. Schwendimann previously advocated her standing based on an intention by ACT to assign intellectual property to her. This is incorrect. Ms. Schwendimann has always contended that ACT did, in fact, transfer its intellectual property to her by virtue of an agreement she reached with ACT years ago. As the Court will recall, AACI accused Ms. Schwendimann and SLW of fraud in connection with the preparation and filing in 2003 of the assignment documentation to memorialize the earlier transfer, thus Ms. Schwendimann and SLW's state of mind was at issue and their intentions at the time of the documentation were important to dispel AACI's misplaced accusations of fraud.

3

years ago. Because the Court has previously found that a sufficient writing exists, and because the Court now has sufficient evidence before it demonstrating the existence of an underlying agreement, Ms. Schwendimann asks that her Renewed Motion for Summary Judgment be granted.

## ARGUMENT

I.   **MS. SCHWENDIMANN HAS PRESENTED PLAIN AND UNREBUTTED EVIDENCE CONCERNING THE UNDERLYING AGREEMENT BETWEEN HER AND ACT.**

In her opening Brief, Ms. Schwendimann detailed the testimony of Mr. Nasser which set forth the essential terms of the agreed upon assignment from ACT to Ms. Schwendimann. (Doc. No. 104 at 5-8, 10-11.) The essential terms included Ms. Schwendimann taking ownership of all patent applications then owned by ACT in exchange for Ms. Schwendimann satisfying all past and future prosecution fees owed by ACT to SLW, and in exchange for Ms. Schwendimann foregoing further action against ACT directly. (*Id.* at 10-11.) AACI provides no testimony or other evidence to rebut these very simple facts presented by Mr. Nasser.

This should be the end of the inquiry, but AACI persists with confusing and, ultimately, futile arguments regarding purported inconsistencies and misplaced case law, which are addressed below.

## II. AACI'S ARGUMENTS AGAINST STANDING ARE LEGALLY AND FACTUALLY DEFICIENT.

### A. Ms. Schwendimann And Mr. Nasser's Testimony Is Consistent.

Unable to rebut the simple and direct evidence of ACT's and Ms. Schwendimann's underlying agreement, AACI attempts to (1) drum-up inconsistencies with other testimony and other evidence in the record; and (2) exploit problems inherent in the fact that the events relevant to this issue occurred nearly a decade ago. In particular, AACI decries the absence of "contemporaneous documents" and the lack of pristine recollection concerning the exact date that ACT and Ms. Schwendimann agreed to the assignment. (*See* Doc. No. 107 at 26.) However, the absence of documents and the inability to recall exact dates is not surprising given the passage of time.

Moreover, in drumming up inconsistencies, AACI is conflating two (2) different issues: (1) Ms. Schwendimann's and ACT's actual underlying agreement regarding the assignment of the patent applications from ACT to Ms. Schwendimann; and (2) the subsequent efforts by legal counsel to memorialize that assignment by written documentation filed with the USPTO. All discussion occurring after February 3, 2003, about the "assignment," or whether the patents had been "assigned" to Ms. Schwendimann related to the efforts to memorialize and document the agreement to assign all patent applications to Ms. Schwendimann, which is confirmed by the undisputed fact that in June 2002, ACT and Ms. Schwendimann told SLW of the agreement and transfer. (Nasser Dep. at 29:22-30:13, 74:20-75:1, 83:17-86:20, Lorentz

5

Decl. Ex. C; SLW Decl. (Doc. No. 55) ¶¶14-16.)[2]  Indeed, following notification of the agreement and transfer, SLW opened new files for Ms. Schwendimann for the very applications at issue and dealt directly with, and for, her alone to prosecute the patents. (SLW Decl. (Doc. No. 55) ¶15.)  The subsequent efforts to document the assignment do not undermine the fact that the actual underlying agreement and transfer that was being memorialized and documented had already occurred.

By way of example, AACI highlights testimony of SLW and claims SLW agreed "that the patents-in-suit had not been assigned to Schwendimann as of May 2003." (Doc. No. 107 at 13 (citing SLW Dep. at 88:4-13, Declaration of Kurt J. Niederluecke, Ex. I.) However, the questioning of SLW referred to by AACI concerned the documentary assignment records at the USPTO, not the scope or content of the underlying agreement between Ms. Schwendimann and ACT. (*See id.* at 86-90.)  This is aptly demonstrated by the following SLW testimony which AACI ignored:

> Q.   So as of May of 2003, ACT still owned the rights in the 845 patent application, correct?
>
> MR. DAVENPORT:  Object to the form of the question, misstates his prior testimony.
>
> THE WITNESS:  As of May 5th of 2003, there had not been an **official written document** assigning the dark transfer case from American Coating Technology to anyone else.

---

[2] "Lorentz Decl." refers to the Declaration of Brent Lorentz in Support of Renewed Motion for Summary Judgment filed contemporaneously with this memorandum.

(SLW Dep. at 89:19-90:1, Lorentz Decl. Ex. A) (emphasis added). Plainly, SLW's testimony related to the written documentary record filed with the USPTO, not to the underlying agreement between Ms. Schwendimann and ACT.

Similarly, AACI cites Ms. Schwendimann's Interrogatory Answers and concludes Ms. Schwendimann was of the view the underlying agreement occurred on February 3, 2003, and not earlier. (Doc. No. 107 at 8-9.) However, as with the SLW testimony, this answer too was discussing the documentary assignments and the "chain of title," not the underlying agreement between ACT and Ms. Schwendimann.[3]

Simply stated, the underlying agreement was struck between ACT and Ms. Schwendimann prior to June 2002, when Ms. Schwendimann and ACT informed SLW of the agreement and SLW opened three (3) new matters to prosecute the patents. As set forth in Ms. Schwendimann's opening Brief, all necessary elements of mutual assent existed before Ms. Schwendimann and Mr. Nasser met with SLW. (*See* Doc. No. 104 at 5-6.) SLW agreed that it was told of the assignment and asked to memorialize it. (*See* SLW Decl. (Doc. No. 55), ¶15-16.) The fact that counsel failed to immediately

---

[3] AACI complains that "Nasser was the only one to testify about a purported oral agreement." (Doc. No. 107 at 24.) This simply is not true. (S*ee, e.g.,* Doc. No. 53 at 12-13 (setting forth Ms. Schwendimann's and SLW's understanding of the underlying agreement.) Moreover, to the extent Ms. Schwendimann has not "testified" about the underlying agreement (which Ms. Schwendimann disputes), it is because AACI was not focused on the underlying agreement when it deposed her prior to the Court's March 19, 2012, Order which specifically asked for evidence of mutual assent by ACT. This was, of course, after Ms. Schwendimann's December 2011, deposition where AACI did not question her about the underlying agreement. Notably, Ms. Schwendimann was prepared to be deposed again by AACI after filing her opening Brief for this motion and the parties even reserved May 14 for the deposition. (Lorentz Decl. Ex. B.) AACI, however, elected not to proceed with further examination of Ms. Schwendimann.

memorialize that transfer and made subsequent mistakes when doing so does not change the fact that the underlying agreement between ACT and Ms. Schwendimann was already completed at that time. Nor does the fact that the parties to that underlying agreement—ACT (through Mr. Nasser) and Ms. Schwendimann—are unable to recall the exact date on which their agreement was consummated undermine the existence and terms of that agreement.

### B.  AACI's Arguments Based On Reformation Case Law Should Be Rejected.

Relying on various reformation cases, AACI contends that Ms. Schwendimann has failed to present "clear and convincing evidence that there was a valid agreement assigning the patents-in-suit." This contention is difficult to fathom given that both parties to the actual agreement—ACT (through Mr. Nasser) and Ms. Schwendimann—have provided evidence of what <u>their agreement</u> was. In fact, no one with first-hand knowledge of ACT's agreement and assignment of patents to Ms. Schwendimann is disputing the existence or validity of the underlying agreement between Ms. Schwendimann and ACT. To the contrary, all have confirmed the underlying agreement and its terms.

The sole party disputing the underlying agreement is AACI—a willful infringer hoping to avoid accountability for its infringement and seeking a finding that no one owns, or has standing to sue upon, the patents-in-suit. AACI has presented no case law where a court has refused to reform a written document based solely on the objections of a self-interested litigant that was not a party to that agreement, nor can such case law be expected to exist given that the "true intent of the parties" to the agreement is the key

8

component of reformation.  *See SCI Minn. Funeral Serv., Inc. v. Washburn-McReavy Funeral Corp.,* 779 N.W.2d 865 (Minn. Ct. App. 2010).  Additionally, the three reformation cases cited by AACI involve the typical situation where it is one of the actual parties to the agreement opposing the reformation, thus the need for clear and convincing evidence.  *See Nichols v. Shelard National Bank,* 294 N.W.2d 730 (Minn. 1980) (reformation action by homeowners against bank seeking reformation of mortgage); *SCI Minn. Funeral Serv., Inc. v. Washburn-McReavy Funeral Corp.,* 779 N.W.2d 865 (Minn. Ct. App. 2010) (reformation action by seller against buyer seeking reformation of stock-sale agreements); *Employers Mut. Cas. Co. v. Wendland & Utz, Ltd.,* 351 F.3d 890 (8th Cir. 2003) (reformation claim by insured versus insurer regarding insurance policy).  These cases do not support AACI's argument.

Here, the true intent of the parties—ACT and Ms. Schwendimann—regarding their underlying agreement has been conclusively and undisputedly demonstrated.  They have, in essence, stipulated that the written documentation prepared by SLW and intended to memorialize their underlying agreement was incorrect and should be interpreted to reflect their actual intentions, and the actual terms of their underlying transfer.  AACI has presented no legal basis which would allow it—an outsider to the underlying agreement—to say that the agreement between ACT and Ms. Schwendimann was something other than what is said by ACT and Ms. Schwendimann.

### C. The 2011 Assignment Is Irrelevant To Ms. Schwendimann's and ACT's Underlying Agreement.

AACI's reliance on the 2011 assignment documents is similarly misplaced. First, AACI's counsel previously conceded before this Court that the 2011 assignment was not relevant to the inquiry on the present standing motions. (*See* Doc. No. 87 n.4.) Second, these documents simply do not relate to the underlying agreement between Ms. Schwendimann and ACT, but instead relate to the ongoing efforts by SLW to correct their mistakes and document, with the USPTO, a transfer from an underlying agreement a decade earlier.

Again, everyone with firsthand knowledge of these documents has confirmed that they were intended to correct the documentary record that exists as a result of counsel's mistakes, not create a new agreement to assign patent applications that had been transferred to Ms. Schwendimann a decade earlier. Mr. Nasser recognized that he executed the 2011 assignment to reaffirm the deal that had been struck back in 2002:

> My understanding was that was our agreement and to reaffirm the agreement we already have in 2002. So I was not signing a new agreement or a new deal on behalf of American Coating because at that point -- but I was basically -- the way I looked at it at that point that we have an agreement in place in 2002 -- late 2001, 2002, we have law firm supposed to take care of all this legal implication. So by signing it, it was reaffirming everything the agreement we had in 2002.

(Nasser Dep. at 101:20-102:4, Lorentz Decl. Ex. C.) Similarly, Ms. Schwendimann testified that the 2011 assignment was intended to be a "belt and suspenders" measure. (Schwendimann Dep. at 111:13-20, Lorentz Decl. Ex. D.) One need only review the actual content of the assignment to confirm that it was a "belt and suspenders" measure

10

because it reassigns <u>every</u> patent and application previously assigned by ACT to, and owned by, Ms. Schwendimann—even those about which there has never been any dispute regarding the previous transfer. (*See* Doc. No. 108, <u>Ex. C</u>.) The 2011 assignment documents were simply a corrective measure to exist as a failsafe in the event someone like AACI disputed the earlier written assignments.[4]

### D. This Case Is Not Like *Belleheumer*.

The Court implicitly rejected AACI's contentions based on *Belleheumer v. Bonnett,* 127 Fed. Appx. 480 (Fed. Cir. 2005) through its aforementioned Order. Nonetheless, AACI recycles its argument here, so Ms. Schwendimann will distinguish it once again.

*Bellehumeur* involved a co-owner of a patent who sued without including his alleged co-inventors. The plaintiff alleged that he was owner of the patents-in-suit based on an assignment he received to a different patent, but the defendant sought dismissal because the assignment for the different patent did not include the patent in suit. At oral argument, plaintiff's counsel argued, apparently for the first time, that the plaintiff had standing because the parties had intended to assign the patents-in-suit to the plaintiff at the time he had received his other assignment. Importantly, however, a close reading of the case reveals that plaintiff's counsel's argument concerning the intent of the parties was not supported by any evidence in the record before the court; indeed, there simply is

---

[4] While currently arguing that the 2011 assignment demonstrates that there was never a previous assignment and simultaneously contending that it is not a valid assignment, AACI confirms its intentions are to obtain a result that renders the patents-in-suit ownerless and unenforceable.

no discussion anywhere in the decision concerning facts relative to the parties' intentions concerning the assignment of the patents-in-suit.

Conversely, and unlike *Bellehumeur,* here there is an abundance of evidence in the record before this Court concerning the parties' intent and actual agreement to assign the '845 Application to Ms. Schwendimann. Thus, when Ms. Schwendimann's counsel argued for denial of AACI's Motion to Dismiss based on an intention of the parties to assign, her counsel stood in a drastically different position than did counsel for the plaintiff in the *Bellehumeur* case. Here, there is a clear evidentiary record of an intended and actual transfer through assignment, but due to a mistake of counsel, the assignment records have been flawed for nearly a decade until it was recently learned that mistakes had been made. Given this undisputed evidentiary record, Ms. Schwendimann has standing.

## CONCLUSION

For the reasons set forth in this Brief and in Ms. Schwendimann's opening Brief, Ms. Schwendimann respectfully requests that her renewed Motion for Summary Judgment be granted.

Dated:  May 31, 2012            /s/ David A. Davenport
                                David A. Davenport (#285109)
                                Brent A. Lorentz (#386865)
                                225 South Sixth Street, Suite 3500
                                Minneapolis, MN 55402
                                (612) 604-6400
                                ddavenport@winthrop.com;
                                blorentz@winthrop.com
                                **Attorneys for Plaintiff/Counterclaim Defendants**

6956092v1

12