**1UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Jodi A. Schwendimann, f/k/a
Jodi A. Dalvey,

       Plaintiff,

   v.

Arkwright Advanced Coating, Inc.,

       Defendant.

_____

Arkwright Advanced Coating, Inc.,

       Counterclaim Plaintiff,

   v.

Jodi A. Schwendimann, f/k/a
Jodi A. Dalvey, and
Cooler Concepts, Inc.,

       Counterclaim Defendants.

                        **MEMORANDUM OPINION**
                        **AND ORDER**
                        Civil No. 11-820 ADM/JSM

_____

David A. Davenport, Esq., Brent A. Lorentz, Esq., and Daniel J. Kelly, Esq., Winthrop & Weinstine, P.A., Minneapolis, MN, on behalf of Jodi A. Schwendimann and Cooler Concepts, Inc.

Kurt J. Niederluecke, Esq., and Laura L. Myers, Esq., Fredrikson & Byron, P.A., Minneapolis, MN, on behalf of Arkwright Advanced Coating, Inc.

_____

**I.  INTRODUCTION**

On June 4, 2012, the undersigned United States District Judge heard oral argument on

Plaintiff and Counterclaim Defendant Jodi A. Schwendimann's ("Schwendimann") Renewed

Motion for Summary Judgment on Standing [Docket No. 102].  Schwendimann alleges

Defendant Arkwright Advanced Coating, Inc. ("AACI") has infringed U.S. Patent Nos.

RE41,623, 7,749,581, 7,754,042, 7,766,475, 7,771,554, and 7,824,748 (collectively, the

"Patents-in-Suit"), which Schwendimann claims she owns.  Compl. [Docket No. 1] ¶¶ 31–46.

AACI challenges Schwendimann's ownership, alleging the Patents-in-Suit were not validly

assigned because there was no writing to satisfy 35 U.S.C. § 261 and no valid agreement to

assign.  By Order dated March 19, 2012 [Docket No. 87] ("March Order"), the Court held a valid

writing existed but deferred the issue of whether that writing memorialized a valid agreement to

assign.  Through this motion, Schwendimann seeks a declaration that such an agreement exists.

For the reasons set forth below, Plaintiff's motion is granted.

## II.  BACKGROUND

Schwendimann is the proprietor of Cooler Concepts, Inc., a business which manufactures

and sells speciality paper products.  Compl. ¶ 1.  Prior to Cooler Concepts, Inc., Schwendimann

was an employee of Advanced Coating Technologies, Inc. ("ACT"), who started in their finance

department and eventually became a co-owner.  Decl. of Brent A. Lorentz in Supp. of Mot. for

Summ. J. on Standing [Docket No. 54] ("Lorentz Decl.") Ex. D ("Schwendimann Dep.") 8:5-8;

14:5-7.  During her employment at ACT, Schwendimann collaborated with President, Chairman,

and majority owner Nabil Nasser ("Nasser") to develop technologies to transfer a printed image

onto a T-shirt by ironing over speciality transfer paper.  Compl. ¶ 17; Decl. Nabil Nasser

[Docket No. 65] ("Nasser Decl.") ¶ 2.

In 2000, ACT experienced financial difficulties.  Aff. of David A. Davenport in Supp. of

Jodi A. Schwendimann's Renewed Mot. for Summ. J. on Standing [Docket No. 105] Ex. A

("Nasser Dep.") 9:15-21.  Furthermore, around this time, ACT owed Schwendimann a

significant amount of back wages.  Id. at 26:10-14.  It became clear that ACT was unable to pay

Schwendimann what she was owed.  Id. at 28:19-21.  To resolve the outstanding debt, Nasser and Schwendimann met and discussed the possibility of assigning some of ACT's intellectual property rights to Schwendimann in exchange for a discharge of at least some of the debt.  Id. at 29:17-21.

In addition to the money it owed to Schwendimann, ACT carried an outstanding balance with its patent counsel Schwegman, Lundberg & Woessner, P.A. ("SLW").  Id. at 27:18-21. ACT and Schwendimann eventually agreed as a part of their transaction that Schwendimann would assume ACT's financial obligations to SLW.  Id. at 32:6-22.

In 2002, ACT, Schwendimann, and SLW met to effect their agreement.  Id. at 30:5-13; 31:9-18.  According to Nasser, the intent of the agreement was to assign all of ACT's intellectual property to Schwendimann, who, in return, agreed to not pursue ACT for back wages, to take over ACT's outstanding debt to SLW, and to pay all patent prosecution costs going forward.  See id. at 29:11-15 (testifying that ACT agreed to assign its rights and interest in the patent applications to Schwendimann); 34:2-1 (testifying that the agreement provided Schwendimann would not pursue action against ACT for unpaid back wages); 85:18-22 (testifying that Schwendimann would pay the continuing prosecution fees and ACT's outstanding attorney's fees to SLW).

After the meeting, ACT stopped receiving invoices from SLW, Schwendimann did not pursue ACT for what she was owed, and Schwendimann continued to prosecute the patents with SLW acting as counsel.  See id. at 34:2-6 (testifying that Schwendimann did not commence any action against ACT for back wages after they agreed to assign the patents); 87:2-4 (testifying that ACT did not receive further invoices from SLW after the 2002 meeting); Decl. of Kurt J.

Niederluecke in Supp. of AACI's Opp. to Schwendimann's Renewed Mot. for Summ. J. on

Standing [Docket No. 108] ("2d Niederluecke Decl.") Ex. I. 175:23-176:3 (SLW testifying that

Schwendimann continued payment for patent prosecution). In March 2003, SLW sent

Schwendimann an email discussing the ownership of the patent applications, stating "We need to

provide consideration back to ACT." 2d Niederluecke Decl. Ex. J. In addition to mentioning

consideration, the email reads: "The situation arose because ACT wanted to avoid abandonment

of its invention but could not pay the fees. You provided consideration by reviving and

prosecuting the applications." Id. The email was sent after the agreement and while

Schwendimann retained SLW as her counsel to continue prosecuting the patents.

The Patents-in-Suit all arise from U.S. Patent Application Serial No. 09/541,845 (the

"'845 Application"). See Compl. Exs. A, C, D, E, F, G. All of the Patents-in-Suit pertain to

reducing the number of steps involved in transferring a printed image onto a colored base.

Compl. ¶ 15. The '845 Application was filed by Schwendimann and Nasser on April 3, 2000,

and was subsequently assigned to ACT. See id. Ex. A at [64]; Decl. of Laura L. Myers in Supp.

of AACI's Mot. to Dismiss [Docket No. 50] ("Myers Decl.") Ex. B. On February 3, 2003,

Nasser, on behalf of ACT, and Schwendimann executed an assignment from ACT to

Schwendimann of U.S. Patent Application Serial No. 09/150,983 (the "'983 Application"), an

application distinct from the '845 Application. Myers Decl. Ex. E. at JS002295-96. On

February 4, 2003, SLW recorded the assignment of the '983 Application with the U.S. Patent

and Trademark Office ("USPTO"). Id. at JS002292-96. There is no dispute the '983

Application was validly assigned and is owned by Schwendimann.

On December 4, 2003, SLW faxed a cover sheet to the USPTO identifying the contents

4

as an assignment of the '845 Application from ACT to Schwendimann.  Decl. of Kurt J.

Niederluecke in Supp. of AACI's Opp. to Schwendimann's Mot. for Summ. J. on Standing

[Docket No. 69] ("1st Niederluecke Decl.")  Ex. 14 at SLW00015-17.  Appended to the cover

sheet was a photocopy of the assignment of the '983 Application ("the Photocopy Assignment")

previously sent to the USPTO, with the client and matter number SLW associated with

Schwendimann and the '983 Application altered to reflect the client and matter number

associated with the '845 Appliaction.  See id. at SLW00018-19 (showing 1010.015 USI visible

in upper right-hand corner with .015  struck out and replaced by .021); Decl. of Schwegman,

Lundberg & Woessner, P.A. [Docket No. 55] ¶ 15a (noting 1010.015 was client and matter

number SLW associated with Schwendimann and the '983 Application), ¶ 15b (noting 1010.021

was client and matter number SLW associated with Schwendimann and the '845 Application).

Cooler Concepts, Inc. initiated this action on April 1, 2011.  On July 18, 2011, AACI

filed an Amended Answer and Counterclaim, challenging for the first time Schwendimann's

ownership of the Patents-in-Suit.  First Am. Answer and Countercl. of AACI in Resp. to Compl.

[Docket No. 33] at 6.  On September 10, 2011, ACT and Schwendimann executed an

Assignment of Patent Rights (the "September 2011 Assignment"), purporting to assign to

Schwendimann the right and interest in certain intellectual property owned by ACT.[1]  2d

Niederluecke Decl. Ex. C.  On September 16, 2011, ACT and Schwendimann executed a

Satisfaction of Debt Agreement, purporting to discharge ACT's debt to Schwendimann in

exchange for intellectual property rights.  Id. at Ex. D.  Finally, on October 5, 2011, ACT signed

---

[1]ACT was administratively dissolved by the state of Wisconsin in 2009.  Myers Decl. Ex.
I.  Because the validity and enforceability of the September 2011 assignment are not at issue
here, the effect of that dissolution need not be considered.

a Written Action of the Board of Directors, memorializing the factual circumstances and prudent judgment conclusions behind the Assignment of Patent Rights and Satisfaction of Debt Agreement.  Id. at Ex. E.

On May 5, 2012, Schwendimann and Cooler Concepts, Inc. renewed its Motion for Summary Judgement on Standing [Docket No. 102].  Pursuant to an Order [Docket No. 98] by Magistrate Judge Mayeron, it is understood by the parties that rather than each renewing their motions, the present motion by Schwendimann will be dispositive of all issues related to standing.

### III.  DISCUSSION

**A.  Standard of Review**

Standing is "an essential and unchanging part of the case-or-controversy requirement of Article III" of the U.S. Constitution.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992) (citation omitted).  "A court may exercise jurisdiction only if a plaintiff has standing to sue on the date it files suit."  Abraxis Bioscience, Inc. v. Navinta LLC, 625 F.3d 1359, 1364 (Fed. Cir. 2010).  "Only a patent owner or an exclusive licensee can have constitutional standing to bring an infringement suit . . . ."  Mars, Inc. v. Coin Acceptors, Inc., 527 F.3d 1359, 1367 (Fed. Cir. 2008) (citation omitted).  If a plaintiff lacks standing, the district court has no subject matter jurisdiction.  Faibisch v. Univ. of Minn., 304 F.3d 797, 801 (8th Cir. 2002).

Schwendimann's Renewed Motion for Summary Judgment on Standing is made under Rule 56 of the Federal Rules of Civil Procedure.  Rule 56(a) provides that summary judgment shall issue "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and

that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Subject matter jurisdiction is a question of law.  DDB Techs, L.L.C. v. MLB Advanced Media, L.P., 517 F.3d 1284 (Fed. Cir. 2008).  Therefore, facts related to standing issues are resolved by the Court.  See id. at 1290–92 (holding there is no right to a jury trial on standing issues related to contract construction in patent infringement action because standing was not sufficiently intertwined with merits of the claims).

**B.  Mutual Assent**

The March 2012 Order held that a valid assignment in writing could exist if the Photocopy Assignment memorialized a valid contract to assign the '845 Application.  Under Minnesota law, a valid contract is formed when there is communication of a specific and definite offer, acceptance, and consideration.[2]  Commercial Assocs, Inc. v. Work Connection, Inc., 712 N.W.2d 772, 782 (Minn. Ct. App. 2006).  As a threshold question for contract formation, there must be an *objective* manifestation of mutual assent.  Benedict v. Pfunder, 183 Minn. 396, 400 (Minn. 1931).  Mutual assent requires a meeting of the minds concerning a contract's essential elements.  Minneapolis Cablesystems v. City of Minneapolis, 299 N.W.2d 121, 122 (Minn.1980).  A contract can be inferred from the circumstances and conduct of the parties involved.  Gryc v. Lewis, 410 N.W.2d 888, 891 (Minn. Ct. App. 1987).  Mutual assent, the objective element to contract formation, is the crux of the analysis here.  Id.

---

[2]As previously addressed in the March Order, the parties implicitly agree that Minnesota law dictates the validity of any assignment contract.  March Order at 10 n.5.

The burden of proof required to establish the validity of the contract rests squarely with Schwendimann.  See Upsher-Smith Labs., Inc. v. Mylan Labs., Inc., 944 F.Supp. 1411, 1425 (D. Minn. 1996) ("[F]or the party, who asserts the validity of the alleged contract, maintains the burden of persuading the trier-of-fact that a contract actually exists, as well as in establishing the actual terms and conditions of that contract").  This burden, however, does not require clear and precise testimony proving the existence of the contract when the actions and conduct of the parties can manifest the parties' true intent.  Capital Warehouse Co. v. McGill-Warner-Farnham Co., 276 Minn. 108, 114 (Minn. 1967).  Each contractual element will be considered in turn.

### 1.  Offer

ACT made a sufficient offer to Schwendimann.  An offer needs definite and certain terms to be legally sound.  Anderson v. Backlund, 159 Minn. 423, 424 (Minn. 1924).  There is no dispute ACT owed Schwendimann money.  In 2002 meetings, Nasser avers ACT proposed assigning the '983 Application and the '845 Application to Schwendimann who, in return, would not to pursue ACT for unpaid back wages.  See Nasser Dep. at 29:4-30:1 (stating ACT agreed to assign the '983 and '845 Applications to Schwendimann to satisfy at least some of the outstanding back pay ACT owed her); id. at 34:2-18 (explaining that part of the agreement was that Schwendimann would not commence formal action against ACT for unpaid wages).

In addition to the debt owed to Schwendimann, in 2002 ACT carried an unsatisfied balance of around $25,000 with their patent counsel SLW.  Id. at 84:17-20; 85:20-22.  ACT and Schwendimann furthered their discussions to include Schwendimann assuming ACT's debt to SLW and paying all future prosecution costs as part of the offer.  Id. at 85:18-22; 32:6-15.

The offer to assign the '845 Application in exchange for debt forgiveness and assumption

of attorney's fees by Schwendimann was therefore definite and certain. A valid offer was made by ACT, and Schwendimann has met her burden of establishing the first prong of mutual assent.

### 2. Acceptance

The next prong of mutual assent is Schwendimann's acceptance ACT's offer. An inquiry into the actions of the parties to the contract can be used to determine if the offer was accepted. See Pierce v. Foley Bros., Inc., 283 Minn. 360, 374 (Minn. 1969) (noting that an act by a party can form the acceptance to the offer). The subsequent conduct of Schwendimann and ACT are evidence the offer was accepted.

ACT owed SLW roughly $25,000 in 2002. Nasser Dep. 84:17-20; 85:20-22. It was agreed that Schwendimann would assume this debt and pay all prosecution costs going forward. Id. ACT stopped receiving invoices or statements from SLW after 2002. Id. at 87:2-4. There is no evidence of record to suggest SLW ever pursued ACT for unpaid bills. In addition to the debt owed to SLW, in 2002 ACT was deficient on its payments to Schwendimann. Id. at 28:6-21. The parties further agreed that Schwendimann would not pursue ACT for back wages. Id. at 34:2-18. Schwendimann never initiated any lawsuit against ACT nor made any other effort to collect money from ACT. Furthermore, Schwendimann's objective conduct since 2002 has been that of an owner. She prosecuted the patent applications, she incorporated the patents into technology she currently sells, and she sued as an owner when she believed someone was infringing the patents. Therefore, Schwendimann's conduct, objectively viewed, evinces acceptance of ACT's offer.

AACI argues the documents executed in 2011 are inconsistent with an agreement being formed and vitiate mutual assent. Indeed, the 2011 Satisfaction of Debt Agreement states "as of

the date of this agreement [ACT] is indebted to [Schwendimann] . . . in an amount that is in

excess of $600,000," 2d Niederluecke Decl. Ex. D § E, and the agreement purports to discharge

Schwendimann's claims on that debt.  See generally id.  Likewise, the 2011 Assignment recites

ACT was the present owner of the Patents-In-Suit.  2d Niederluecke Decl. Ex. C.  AACI argues

the debt between ACT and Schwendimann was only discharged in 2011, and thus, could not

supply the consideration in the 2002 agreement.

      Construction of these documents requires an objective evaluation of the relevant

circumstances *in context*.  See Morrisette v. Harrison Int'l Corp., 486 N.W.2d 424, 427

(Minn.1992) ("In determining whether a contract was formed a court does not need to rely on

words alone, but can consider the surrounding facts and circumstances in the context of the

entire transaction, including the purpose, subject matter, and nature of it.") (quotation omitted).

In September 2011, this litigation had already begun and questions concerning ownership had

been raised.  In that context, Schwendimann asserts that the 2011 Agreements were executed to

reaffirm what was agreed upon in 2002.  See Schwendimann Dep. at 111:13-20 (testifying that

the 2011 Assignment of Patent Rights operated to correct an error that cast doubt on her owning

ACT's intellectual property and reaffirm what the parties previously agreed upon).  Nasser's

subjective intent was the same.  See Nasser Dep. at 101:16-102:4; 131:11-13 (testifying that

Nasser signed the documents in 2011 believing it was reaffirming things that happened in the

past).  This subjective understanding of ACT and Schwendimann is bolstered by their objective

conduct.  As discussed above, Schwendimann's conduct, objectively viewed, has been consistent

with acceptance.  She never pursued ACT for back wages, prosecuted the '845 Application, and

has conducted herself as the owner of the Patents-in-Suit.  For its part, ACT has never asserted

an ownership interest in these patents and was never called upon to pay its outstanding attorney's fees to SLW.

Moreover, the September 2011 Assignment of Patent Rights memorialized the transfer of additional intellectual property from ACT to Schwendimann, including the '983 Application. 2d Niederluecke Decl. Ex. C, schedule 1. It is undisputed, however, that ACT properly assigned its rights and interests in the '983 Application to Schwendimann in 2003. Meyers Decl. Ex. E. Therefore, the language in the Assignment of Patent Rights, stating ACT has not made any previous assignments of the patents listed on the attached schedule of patents is not accurate. Objectively viewed in context, the 2011 Assignment was meant to memorialize previous agreements to the extent valid writings did not exist. It was not meant to be a present assignment.

Finally, AACI argues no meeting of the minds was reached because Nassser testified the assignment occurred in 2002 and Schwendimann testified it occurred in 2003. This discrepancy is immaterial. First, after the passage of more than nine years, it is unsurprising that some discrepancy might exist. Furthermore, no evidence suggest that ACT revoked its offer prior to 2003 or that Schwendimann was otherwise unable to accept the offer at that time. The focus is whether there was objective manifestation of assent of the parties to the contract. Here, both ACT and Schwendimann's conduct has been consistent with contract formation prior to the recording of the Photocopy Assignment, and Schwendimann has met her burden with respect to acceptance.

### 3. Consideration

The final element of mutual assent is consideration. Consideration is a necessary element

of every contract.  See Franklin v. Carpenter, 309 Minn. 419, 422 (Minn. 1976) ("When there is a lack of consideration, no valid contract is ever formed").  Consideration is something of value given in exchange for the item or performance bargained for.  Dell v. Hasselmo, 542 N.W.2d 649, 656 (Minn. Ct. App. 1996).  Schwendimann avers the consideration to ACT is her not pursuing back wages and assuming ACT's financial obligations to SLW.  AACI argues, however, Schwendimann's conduct is inconsistent with this being the agreed upon consideration.

AACI cites an email drafted by SLW to Schwendimann, stating there is a "need to provide consideration back to ACT."  2d Neiderluecke Decl. Ex. J.  However, the email between SLW and Schwendimann does not demonstrate a lack of consideration because SLW is not a party to the contract.  Only the conduct of *parties to a contract*, objectively viewed, is relevant to contract formation.  Gresser v. Hotzler, 604 N.W.2d 379, 382 (Minn. Ct. App. 2000).  SLW was simply told to draft the documents to effectuate the assignment of the '983 and '845 Applications.  See Nasser Dep. at 31:9-18 (noting the reason behind the meeting of Schwendimann, ACT, and SLW was to memorialize the assignment of all ACT's intellectual property to Schwendimann).  The legal conclusions made by SLW, a nonparty to the contract, are irrelevant.  While SLW's understanding of the agreement may be probative of Schwendimann's state of mind, the objective facts show Schwendimann actually continued to prosecute the patents and Schwendimann never pursued ACT for back wages.  See id. at 34:2-6 (testifying that Schwendimann never pursued ACT for back wages); 2d Neiderluecke Decl. Ex. I at 175:23-176:3 (testifying that Schwendimann continued prosecuting that patent applications).

The continuing prosecution itself is valuable consideration for ACT; the company expended its resources prosecuting the applications and had a legitimate desire to see the patents

issue.  Inventors pour considerable efforts into their ideas, often developing an emotional tie with the invention that runs deep.  Seeing an idea get developed and culminating in patent protection is an arduous process and is usually accompanied by significant personal attachment.  Without Schwendimann's continued prosecution efforts, ACT's prior financial investment and commitment to the patent applications would likely have resulted in a total loss.  With Schwendimann assuming responsibility for the ongoing prosecution, a role Schwendimann was under no obligation to assume, ACT received value.

Furthermore, rather than casting doubt on the consideration provided, the email demonstrates Schwendimann provided valuable consideration as agreed.  The language in the email stating the need to provide consideration is illogical because the preceding paragraph states: "The situation arose because ACT wanted to avoid abandonment of its invention but could not pay the fees.  *You provided consideration* by reviving and prosecuting the patents." Neiderluecke Decl. Ex. J (emphasis added).  Therefore, SLW's comment regarding the need for Schwendimann to provide consideration to ACT is a stray remark of a nonparty to the contract. The very same email states Schwendimann was already performing her contractual obligations and provided consideration to ACT.

AACI additionally cites to the 2011 documents to cast doubt on consideration.  For the reasons discussed above, those documents, when viewed objectively and in context, memorialize a prior contract to the extent no valid writing previously existed.  They do not vitiate the valid consideration provided by Schwendimann.  Schwendimann has sufficiently demonstrated the existence of a contract to assign prior to the Photocopy Assignment.  This does not end the inquiry, however, as reformation of the Photocopy Assignment must also be considered.

**C. Reformation**

On its face, the Photocopy Assignment does not transfer rights in the '845 Application. Therefore, Schwendimann asks the Court to reform the agreement to accomplish the intent of her agreement with ACT to assign the '845 Application. Reformation is an equitable remedy allowing modification of an existing contract to accurately reflect the parties' true intentions at the time the contract was formed. SCI Minn. Funeral Servs., Inc. v. Washburn-McReavy Funeral Corp., 795 N.W.2d 855, 864 (Minn.2011). The party seeking reformation must prove its elements by clear and convincing evidence. Id. at 865 (quoting Leamington Co. v. Nonprofits' Ins. Ass'n, 615 N.W.2d 349, 354 (Minn.2000) (quotation omitted)).

Schwendimann, as the party seeking reformation, must prove that: "(1) there was a valid agreement between the parties expressing their real intentions; (2) the written instrument failed to express the real intentions of the parties; and (3) this failure was due to a mutual mistake of the parties, or a unilateral mistake accompanied by fraud or inequitable conduct by the other party." Nichols v. Shelard Nat'l Bank, 294 N.W.2d 730, 734 (Minn.1980). The clear and convincing quantum of proof required for reformation is regarded as a "high" burden. Leamington, 615 N.W.2d at 355 n.5.

An exact definition of the clear and convincing standard has never been formally announced. However, by its relation to other burdens of proof, the clear and convincing standard has been labeled as "intermediate." See Addington v. Texas, 441 U.S. 418, 425 (1979) (designating the clear and convincing standard as "intermediate"). This intermediate standard does not require exact precision. See Colorado v. New Mexico, 467 U.S. 310, 317 (1984) (determining the clear and convincing standard requires the factual contentions to be "highly

14

probable").

As noted in the March Order, the critical question was whether ACT and Schwendimann mutually assented to an agreement, which goes to the heart of the first requirement of reformation. The above discussion conclusively shows the first element for reforming a contract has been satisfied.

With respect to the second element, the March Order held that the Photocopy Assignment was an instrument in writing. Under Minnesota law, a writing that fails to express the true intentions of the parties cannot be merely *any* writing with no relationship to the contract between the parties; rather, reformation "contemplates altering or amending [a contract's] terms to reflect the true intent of the parties at the time of [that contract's] inception." SCI Minn. Funeral Servs., Inc. v. Washburn-McReavy Funeral Corp., 779 N.W.2d 865, 870 (Minn. Ct. App. 2010) (internal quotations and citations omitted). AACI argues that the Photocopy Assignment does not reflect the intent of the parties at its inception because Nasser executed the Photocopy Assignment without any intent to assign the '845 Application, Nasser had never even seen the Photocopy Assignment, and Schwendimann believed the Photocopy Assignment to be the wrong assignment. AACI's arguments, however, are unavailing.

The Photocopy Assignment is a photocopy of the assignment of the '983 Application with hand-written alterations. Therefore, the date of inception of the Photocopy Assignment is not the date of the assignment of the '983 Application, but rather is the date of the hand-written alterations. AACI's first argument fails on those grounds. Neither Nasser nor Schwendimann executed the Photocopy Assignment. This lack of a signature is immaterial to the validity of the Photocopy Assignment as a writing under 35 U.S.C. § 261, see March Order at 11, and is

15

likewise immaterial under Minnesota contract law, as discussed above the conduct of the parties is evidence that a contract to assign was formed.   It is therefore immaterial what Nasser's intent was on the day he executed the assignment of the '983 Application.  That assignment is not the Photocopy Assignment, they are distinct documents.

Likewise, AACI's other arguments fail because neither Nasser nor Schwendimann were present on the date of inception of the Photocopy Assignment, and therefore it is neither surprising nor fatal that they did not recognize it or understand it.  The evidence is as follows: Nasser and Schwendimann asked SLW to effect their agreement to assign the '845 Application, SLW failed to reduce that agreement to writing prior to the deadline to file such a writing with the USPTO, and on the last day to file the writing with the USPTO someone at SLW photocopied the assignment of the '983 Application and made hand-written alterations.  Because Nasser and Schwendimann expressly asked SLW to effect their agreement in writing, and SLW consented to do so, a dual agency relationship was formed.  See A. Gay Jenson Farms Co. v. Cargill, Inc., 309 N.W.2d 285, 290 (Minn. 1981) ("Agency is the fiduciary relationship that results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act."); PMH Props. v. Nichols, 263 N.W.2d 799, 802 (Minn. 1978) (holding dual agencies permissible under Minnesota law). This was a special agency for the purpose of drafting a writing effecting their agreement.  The only reasonable inference from the evidence of record is that the Photocopy Assignment was created in a hurried attempt to reduce something to writing on the last day possible to record a written assignment.  Indeed, the Photocopy Assignment on its face refers to the '845 Application and Schwendimann, albeit with client and matter numbers that would not be readily discernable

16

to a stranger.  Therefore, the intent was clearly to reduce to writing the agreement reached by

Schwendimann and Nasser to assign the '845 Application.  In fact, had the hand-written

alterations not only altered the client and matter numbers but also altered the patent application

numbers from '983 to '845, reformation would not be necessary.  Because Schwendimann and

Nasser were acting as principals through SLW as their agent, this result is not altered by the fact

that Nasser did not personally see the Photocopy Assignment or that Schwendimann believed a

different writing to exist (when none in fact did).  At the inception of the Photocopy Assignment,

the true intention of ACT and Schwendimann, acting through SLW, was to assign the '845

Application from ACT to Schwendimann.

As to the third element, clear and convincing evidence shows the failure to express the

true intentions of ACT and Schwendimann was due to a mistake on behalf of SLW.  As a dual

agent of both ACT and Schwendimann, this mistake is a mutual mistake warranting reformation.

Schwendimann has met her burden under Minnesota law for the remedy of reformation.

The clear intention of ACT was to honor the agreement it reached with Schwendimann by

assigning to her the '845 Application.  The Photocopy Assignment is therefore reformed to

assign ACT's interests in the '845 Application to Schwendimann.

## IV.  CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Schwendimann's Renewed Motion for Summary Judgment on Standing [Docket No. 102] is **GRANTED**.

BY THE COURT:


_____s/Ann D. Montgomery_____
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  August 10, 2012.